Opinion issued July 22, 2014.



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-01082-CV

_____

**ANGELA MATTHEWS, Appellant**

**V.**

**SHIRLEY LENOIR, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF SHANA LENOIR AND CHRISTOPHER MCKNIGHT, INDIVIDUALLY AND AS NEXT FRIEND OF NAYLA MCKNIGHT, Appellees**

On Appeal from the 164th District Court
Harris County, Texas
Trial Court Case No. 2012-35806

**O P I N I O N**

In this interlocutory appeal,[1] Angela Matthews appeals the trial court's order denying her motion to dismiss a wrongful death health care liability claim arising out of her alleged negligence in providing nursing care to Shana Lenoir and her two unborn children. Matthews was employed as a nurse by U.T. Physicians. The trial court held that Shirley Lenoir, Individually and as Personal Representative of the Estate of Shana Lenoir, and Christopher McKnight, Individually and as Next Friend of Nayla McKnight (collectively, the Lenoirs) had timely served an expert report on Matthews as required for a health care liability claim.[2]

Matthews contends that the trial court abused its discretion in denying her motion to dismiss because she was not served an expert report until after the 120-day deadline to serve the reports had passed. We reverse the trial court's order denying Matthews's motion to dismiss, render judgment in Matthews's favor, and remand for proceedings consistent with this opinion.

## Background

In April 2010, Shana Lenoir visited U.T. Physicians for medical treatment related to her pregnancy. Dr. Leah Ann Gonski reviewed Shana's medical history, noting that she had a prior preterm delivery of twins and that only one baby had

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West Supp. 2013).

[2]     *See* Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 TEX. GEN. LAWS 1590 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2013)).

2

survived. Gonski also conducted a brief physical exam, noting that Shana was approximately 35 weeks into her second pregnancy with twins. Based on a prior note in Shana's medical record stating that "Progesterone weekly started," Gonksi wrote "Progesterone shot IM weekly" and signed her name in Shana's medical record. Matthews, a licensed vocational nurse, then administered a progesterone injection to Shana.

Early the next day, Shana had difficulty breathing. The EMS responded to an emergency phone call at Shana's home and found Shana collapsed and unresponsive. The EMS rushed Shana to the emergency room but she and her unborn twins were pronounced dead on arrival.

The Lenoirs brought this health care liability suit on June 20, 2012, claiming that Dr. Gonski, a medical resident employed by U.T. Physicians, was negligent in providing unlawful, unsupervised medical treatment to Shana and that Gonski had also unlawfully delegated Shana's treatment to Matthews. The Lenoirs also claimed that Matthews had been "practicing medicine without a license by administering the progesterone injection" and that the drug she injected was not an FDA-approved drug. Further, the Lenoirs alleged that Shana's medical bills incorrectly stated that Dr. Jaou-Chen Huang, another physician at the clinic, had delivered Shana's medical treatment.

The Lenoirs served process on U.T. Physicians and both doctors. All three filed their original answers in July 2012. The state attorney general responded on behalf of U.T. Physicians, alleging that it was a governmental unit and, therefore, entitled to immunity. The attorney general's response stated that it answered only for U.T. Physicians—not any other defendants.

In September 2012, the Lenoirs served Texas Medical Liability Act (TMLA) chapter 74 expert reports on the attorney general, addressed to "U.T. Physicians f/k/a University Care Plus" and separately to the counsel of record for "Leah Ann Gonski Marino f/k/a Leah Ann Gonski and Jaou-Chen Huang, M.D." Neither expert report was addressed to Matthews. On October 18, 2012, the 120-day deadline for the Lenoirs to timely file a chapter 74 expert report expired.

On October 25, 2012, after the 120-day expert report deadline had passed, the Lenoirs served process on Matthews. On November 15, 2012, the attorney general filed an original answer on her behalf. On January 3, 2013, almost three months after the 120-day deadline had passed, the Lenoirs served an expert report on Matthews.

Over 350 days after being served with process, Matthews simultaneously moved for summary judgment and to dismiss the suit, claiming that the Lenoirs failed to serve a timely chapter 74 expert report. The Lenoirs responded, arguing that they had timely served an expert report on Matthews's attorney, the attorney

4

general, in September 2012. According to the Lenoirs, upon receiving notice of the suit pending against Matthews's employer, U.T. Physicians, the attorney general had become Matthews's mandatory counsel of record and that they had timely served an expert report on her. The trial court denied Matthews's motions for summary judgment and for dismissal.[3]

Matthews filed a timely notice of appeal from the trial court's interlocutory order denying the motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(10) (West Supp. 2013).

### Standard of Review

We review a trial court's ruling on a motion to dismiss a health care liability lawsuit pursuant to chapter 74 of the TMLA for an abuse of discretion. *See* Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 TEX. GEN. LAWS 1590 (amended 2013) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West Supp. 2013)); *see also Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex. 2001) (reviewing dismissal under section 74 predecessor statute for abuse of discretion); *Runcie v. Foley,* 274 S.W.3d 232, 233 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (same). We defer to a trial court's factual findings if they are supported by evidence, but when there is no factual dispute, only the legal question of whether the plaintiff timely served reports remains. We

---

[3] Matthews does not challenge the trial court's denial of summary judgment on appeal.

review questions of law de novo. *Univ. of Tex. Health Sci. Ctr. at Houston v. Gutierrez*, 237 S.W.3d 869, 871 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

Likewise, we review de novo questions of statutory interpretation. *Heriberto Sedeno, P.A. v. Mijares,* 333 S.W.3d 815, 818 (Tex. App.—Houston [1st Dist.] 2010, no pet.). When construing a statute, the reviewing court's overriding goal is to determine the Legislature's intent in enacting the statute. *McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003); *City of Houston v. Hildebrandt*, 265 S.W.3d 22, 25 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). The Texas Supreme Court has repeatedly held that when courts construe statutes, they should start with the text because it is the best indicator of the Legislature's intent. *See Fresh Coat, Inc. v. K–2, Inc.*, 318 S.W.3d 893, 901 (Tex. 2010). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S. Ct. 1146, 1149 (1992) (citation omitted). When possible, reviewing courts should interpret a statute solely by reference to its language. *Fresh Coat,* 318 S.W.3d at 901. Courts, however, are not confined to isolated statutory words or phrases; they should consider the entire act to determine legislative intent. *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001); *Hildebrandt*, 265 S.W.3d at 25.

**Motion to Dismiss**

Matthews contends that the Lenoirs failed to serve a timely expert report on her as required by chapter 74 of the TMLA. Specifically, she contends that timely service of an expert report on her employer, U.T. Physicians, did not satisfy the statutory requirement to serve an expert report on her. The Lenoirs respond that the attorney general became Matthews's counsel of record when it received notice of the initial petition and that they served an expert report on the attorney general before the 120-day deadline had passed. The Lenoirs also argue that Matthews waived any argument regarding the timeliness of the expert report by failing to object to the sufficiency of the report within 21 days of being served the report. Further, the Lenoirs contend that dismissal of their claims would violate their rights under the due process and open courts provisions of the Texas constitution because the 120-day deadline expired before Matthews was served.

## A. Waiver

As a preliminary matter, we first address the Lenoirs' contention that Matthews has raised issues "for the first time on appeal which [were] not presented to the trial court" because Matthews failed to file a reply to their response to Matthews's motion to dismiss. Specifically, the Lenoirs contend that Matthews did not make the following assertions in the trial court that they are making on appeal: (1) the Lenoirs conceded that Matthews was first served with an expert report on

January 3, 2013, (2) there is no evidence Matthews requested the attorney general to represent her, (3) the attorney general does not automatically become a public servant's attorney, (4) the September expert report served on the attorney general did not constitute timely service of an expert report on Matthews, and (5) that "the Lenoirs' evidence of due diligence does not arise to the level required for an Open Courts challenge."

The Lenoirs cite Texas Rule of Appellate Procedure 33.1, along with *Marine Transportation Corp. v. Methodist Hospital*, 221 S.W.3d 138, 147 n.3 (Tex. App.—Houston [1st Dist.] 2006, no pet.) and *Salazar v. Coastal Corp.*, 928 S.W.2d 162, 167 (Tex. App.—Houston [14th Dist.] 1996, no writ), to support their contention that Matthews was required to submit a written reply to the Lenoirs' response to Matthews's motion to dismiss. In both *Marine Transportation* and *Salazar*, the appellate courts applied the general principle that failure to preserve a complaint in the trial court precludes a party from raising that issue for the first time on appeal. *Marine Transp.*, 221 S.W.3d at 147 n.3; *Salazar*, 928 S.W.2d at 167; *see* TEX. R. APP. P. 33.1(a)(1)(A) (stating that to preserve complaint for appellate review, party must make timely request, objection, or motion with sufficient specificity to notify trial court of complaint and to afford trial court opportunity to rule on objection); *cf.* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be

considered on appeal as grounds for reversal."); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993) (noting that except when challenging sufficiency of summary judgment, "non-movant must expressly present to the trial court, by written answer or response, any issues defeating the movant's entitlement" to summary judgment to preserve right to appeal). While the Lenoirs correctly cite this rule, their argument that it required Matthews to file a written reply to their response to the motion to dismiss is misplaced.

Rule 33.1 requires the appealing party to raise issues before the trial court sufficient to give the trial court notice of their complaint—a requirement that Matthews met by first filing her motion to dismiss and later by argument on the record in the trial court. Matthews did not, however, have a burden of replying to the Lenoirs' response. Even assuming that Matthews had a burden of replying to the Lenoirs' response, we conclude that Matthews sufficiently preserved error by raising those arguments on the record.

At the hearing on her motion to dismiss, Matthews noted that it is undisputed that Matthews was served with the expert report on January 3, 2013. And she argued that (1) there was no evidence that she retained the attorney general as her counsel of record before the Lenoirs served their September expert report on the attorney general, (2) the attorney general "is not automatically her attorney as of the time the expert report was served," (3) the attorney general could

not have been her lawyer "until at least after" she was served process and, (4) the attorney general "had not appeared as attorney of record for Nurse Matthews" when the September expert report was served. Lastly, Matthews responded on the record to the Lenoirs' argument that section 74.351 is unconstitutional.[4]

Matthews's arguments in the trial court are sufficiently similar to those she now raises on appeal. Accordingly, we conclude that Matthews preserved all arguments she raises on appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A).

## B.    Expert report requirement

Section 74.351 of the Texas Civil Practice and Remedies Code requires a party who asserts a health care liability claim to serve an expert report on every physician or health care provider against whom liability is asserted. *See* Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 TEX. GEN. LAWS 1590 (amended 2013); *Heriberto Sedeno*, 333 S.W.3d at 818. At the time of this lawsuit, the plaintiff was required to file an expert report within 120 days of filing the initial petition. *See* Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 TEX. GEN. LAWS 1590 (amended 2013).[5] If a timely expert report is not filed, the

---

[4]    On appeal, Matthews contends that the Lenoirs waived their constitutional argument by inadequate briefing and as a matter of law.

[5]    The Legislature recently amended section 74.351(a) to require each health care liability claimant to serve an expert report "not later than the 120th day after *each defendant's original answer* is filed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (emphasis added). The new provision applies to all suits filed after September 1, 2013. The Lenoirs filed their claims on June 20, 2012 and, therefore,

affected health care provider may file a motion to dismiss, and the court must dismiss the claim without prejudice. *See id.* A health care provider may waive her right to complain about the adequacy of an expert report by failing to challenge the report's adequacy within 21 days of service of the report. *Id.* However, there is no deadline to file a motion to dismiss for failure to timely serve chapter 74 expert reports. *See Heriberto Sedeno*, 333 S.W.3d at 823–24; *Obstetrical & Gynecological Assocs., P.A. v. McCoy*, 283 S.W.3d 96, 103 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

The Lenoirs filed their initial petition on June 20, 2012. Accordingly, they had until October 18, 2012 to timely serve an expert report on every physician or health care provider named in the lawsuit. *See* Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 TEX. GEN. LAWS 1590 (amended 2013). The Lenoirs timely served an expert report on Matthews's employer, U.T. Physicians, through its counsel of record, the office of the state attorney general.[6] The Lenoirs contend that by serving the attorney general they also timely served an expert report on Matthews. The Lenoirs further contend that Matthews waived any challenge to the

---

the former section 74.351(a) applies to their claims. *See* Act of Sept. 1, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 TEX. GEN. LAWS 1590 (amended 2013).

[6] All parties agree that the Lenoirs timely served expert reports on the physician defendants, Dr. Gonski and Dr. Huang.

timeliness of the report by failing to object within 21 days of being served an expert report.

### 1.    Waiver through failure to object to adequacy of report

Upon being served an expert report, a health care provider-defendant has 21 days to challenge the sufficiency of the expert report. *Id.*; *see, e.g.*, *Hillery v. Kyle*, 371 S.W.3d 482, 489 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (challenging sufficiency of expert report and contending defendant's report was "conclusory"). A defendant's failure to object to the adequacy of an expert report, however, does not waive her right to challenge the timeliness of an expert report. *See Poland v. Grigore*, 249 S.W.3d 607, 615–16 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding 21-day deadline to object to report's sufficiency does not impose similar deadline on defendant to object to timeliness of report); *see also Jernigan v. Langley*, 111 S.W.3d 153, 156–57 (Tex. 2003) (holding 600-day delay in objecting to timeliness of export report not waiver); *Heriberto Sedeno*, 333 S.W.3d at 823, 825 (holding 912-day delay in objecting to timeliness of expert report not waiver).

Accordingly, we conclude that Matthews did not waive her right to challenge the timeliness of the Lenoirs' expert report by not objecting to the sufficiency of the expert report.

## 2. Whether serving timely expert report on employer satisfied chapter 74 expert-report requirements as to employee parties

Under the pre-2013 version of section 74.351(a), the 120-day deadline to serve expert reports on all defendants applies regardless of whether each defendant has been served notice of the underlying lawsuit. *Zanchi v. Lane*, 408 S.W.3d 373, 377, 380–81 (Tex. 2013) (concluding that "a physician or health care provider against whom [a health care liability claim] is asserted is a 'party'" who must be timely served expert report regardless of whether he has been served process in underlying suit). In a lawsuit involving multiple defendants, timely serving an expert report on one defendant does not satisfy the requirement to serve timely expert reports on all other defendants. *See Gutierrez*, 237 S.W.3d at 874 (holding that service of expert report on state entity employee did not satisfy statutory requirement to also serve expert report on state entity when both defendants were named in lawsuit).

In *Gutierrez*, the plaintiff argued that serving a timely expert report on the defendant state employee also constituted timely service on the state employer. *Id.* at 873. We reasoned that when a plaintiff files a lawsuit against both a state entity and its employee, they are to be treated as separate defendants and, therefore, must each be served with an expert report. *Id.* at 874; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (West 2011) (stating that when suit filed against employee could have been filed against employer, "[o]n the employee's motion, the suit

13

against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant"); TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001(12)(A)(vii), B(ii) (West Supp. 2013) (defining health care provider and distinguishing between "health care institution" and "employee . . . acting in the course and scope of the employment or contractual relationship"). Because the plaintiff in *Gutierrez* did not serve expert reports on both defendants, we held that the non-served defendant should be dismissed, regardless of the employer-employee relationship between the two defendants. *Gutierrez*, 237 S.W.3d at 874.

When the Lenoirs filed their initial petition in June 2012 naming both U.T. Physicians and its employee, Matthews, as defendants, both defendants became parties to the lawsuit on that date—not when they were served process.[7] *See Zanchi*, 408 S.W.3d at 375, 377–78 (overruling prior law defining "party" as those on whom process had been served and construing "'party' [in section 74.351(a)] to mean one named in a lawsuit" regardless of whether he has been served with process). Because the Lenoirs did not serve an expert report on Matthews until slightly more than four months after filing suit, the Lenoirs failed to satisfy the 120-day statutory requirement of serving a timely expert report on Matthews. *Cf.*

---

[7] Notably, the Lenoirs served expert reports on employees Dr. Gonski and Dr. Huang by serving their counsel of record and the Lenoirs did not argue that the attorney general had also become the doctors' default counsel of record upon being served on behalf of the institution, U.T. Physicians.

*Gutierrez*, 237 S.W.3d at 874 ("If the employee and the governmental unit were the same defendant, the requirement that a party name the governmental unit as a defendant would be superfluous.").

The Lenoirs contend that they timely served an expert report on Matthews because they timely served a report on the attorney general—who at the time was counsel of record for U.T. Physicians only, but, subsequently appeared on Matthews's behalf. The Lenoirs' argument turns upon their interpretation of section 104 of the Texas Civil Practice and Remedies Code. Accordingly, we next consider whether the attorney general represented Matthews as her counsel in September 2012 when it received the Lenoirs' expert report.

### 3. Whether the attorney general automatically became Matthews's counsel of record

The Texas Civil Practice and Remedies Code states that the attorney general "shall defend a public servant" in lawsuits alleging damages based on an act or omission by the public servant "in the course and scope of the person's office, [or] employment." TEX. CIV. PRAC. & REM. CODE ANN. §§ 104.002, 104.004 (West 2011). However, the attorney general has no obligation to defend a state employee and the state has no responsibility for any damages unless (1) the plaintiff serves process on the attorney general and gives the state an opportunity to defend the suit or (2) the state employee being sued delivers all process served on her to the

15

attorney general within 10 days of being served in the lawsuit. TEX. CIV. PRAC. & REM. CODE ANN. § 104.005 (West 2011).

The requirement that the attorney general must be served process on behalf of an employee or forwarded process by a served employee before state liability attaches undermines the theory that the attorney general automatically becomes counsel of record for a state employee without service specific to that defendant. *See id.* Section 104.005 states that a government employee may, but is not required to, seek the attorney general's representation. *Id.*; *cf. Sweed v. Nye*, 319 S.W.3d 791, 795–96 (Tex. App.—El Paso 2010, pet. denied) (holding that attorney general does not have blanket authority to accept service of process and may be served process only when it has been designated administrative head of defendant state agency).

A state employee is not served through service on the state attorney general; service on the attorney general is simply a mechanism necessary to ensure that the state is liable for the conduct of its employees. *See Hamilton v. Pechacek*, No. 02–12–00383–CV, 2014 WL 1096018 (Tex. App.—Fort Worth Mar. 20, 2014, no pet. h.) (mem. op.). In *Hamilton*, the court of appeals held that the trial court properly denied a plaintiff's motion for default judgment when he served process on the attorney general instead of serving the executive director of the Texas Department of Criminal Justice, as required by statute. *Id.* at *3. The court stated that Texas

Civil Practice and Remedies Code section 104.005 "does not address whom the plaintiff must serve but rather whom the government-employee defendant must serve if the employee desires for the State to cover the cost of defending him." *Id.* at \*2. *Hamilton* undercuts the Lenoirs' argument that the attorney general automatically represents a state employee.

In summary, the Texas Civil Practice and Remedies Code does not designate the attorney general as an agent for service of process for public servants. Rather, it creates state liability for certain specified conduct but also requires the state to have an opportunity to defend itself against such liability through service in the lawsuit or by a request for representation from the public servant. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 104.001–005. The Lenoirs cite no contrary authority to support their contention that service of process on the attorney general for a government agency defendant named in a lawsuit may also constitute service on that government agency's employee named in the same lawsuit.

Accordingly, we conclude that the service on the attorney general did not satisfy the Lenoirs' statutory obligation to serve an expert report on Matthews. Because the Lenoirs failed to timely serve an expert report within 120 days of filing their initial petition, they faced dismissal under the then-current section 74.351(a) service rules.

**4. Whether granting dismissal for failure to timely serve an expert report violates the Lenoirs' rights under the Texas Constitution**

In their final argument, the Lenoirs' contend that dismissal of their claims would violate the open courts and due process provisions of the Texas Constitution because "they were unable to serve process on Matthews within 120 days of filing suit." We turn first to the Lenoirs' open courts argument.

To demonstrate an open courts constitutional violation, a complaining party must demonstrate that she (1) has a cognizable common-law cause of action and (2) restriction of the claim is unreasonable or arbitrary when balanced against the state's purpose. *Diaz v. Westphal*, 941 S.W.2d 96, 100 (Tex. 1997). To satisfy the first element, the Lenoirs had the burden of demonstrating that the common-law recognized a right of action for wrongful death. *Id.*

The Lenoirs fail to cite any authority demonstrating that there was a common law right of action for wrongful death. To the contrary, the Texas Supreme Court has "repeatedly" held that the common law did not recognize a cause of action for wrongful death. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 356 (Tex. 1990); *see Witty v. Am. Gen. Capital Distrib., Inc.*, 727 S.W.2d 503, 508 (Tex. 1987); *Duhart v. State*, 610 S.W.2d 740, 742 n.2 (Tex. 1980). We conclude that dismissal of the Lenoirs claims would not violate the open courts provision of the Texas constitution.

The Lenoirs also argue that applying section 74.351(a) to bar their claims would violate their due process rights under the Texas Constitution because they were unable to serve Matthews within the statutory deadline. The Lenoirs' due process argument relies exclusively on then-Justice Hecht's concurring opinion in *Zanchi*. *See Zanchi*, 408 S.W.3d at 383 (Hecht, J., concurring). Justice Hecht explained that the effect of the 120-day deadline is to create "a presumption that a claim lacks merit and should be dismissed if the claimant cannot provide a supporting expert report within 120 days after filing suit." *Id.* That presumption, however, might violate due process when a claimant is unable to "find the defendant within the same time period." *Id.* In that situation, the presumption is "potentially constitutionally infirm." *Id.*

Justice Hecht's opinion did not state that dismissal of a plaintiff's claim where the plaintiff faced an "inability to find the defendant" constitutes a due process violation; that issue was not before the Court, and he carefully did not reach it. Nor did Justice Hecht analyze the merits of such a contention. Rather, he narrowly observed the potential for a constitutional problem without specifying under which circumstances one's due process rights would be found to have been harmed. In short, Justice Hecht's opinion raises the question but does not provide an answer. We must go elsewhere to find that answer.

But the Lenoirs do not provide us with any authority to answer the question of whether their due process rights were harmed. They do not discuss, or even cite, the Texas Supreme Court's opinion in *Stockton v. Offenbach*, 336 S.W.3d 610, 617 (Tex. 2011), in which the Court agreed with the court of appeals that the plaintiff's medical malpractice claim had to be dismissed for failure to timely file an expert report. *Id.* The Court rejected that plaintiff's due process claims because she did not exercise due diligence in filing a motion for substitute service and she waited four months before filing a supplemental motion for substitute service. *Id.* Nor do the Lenoirs argue that they acted with a "sense of urgency" in obtaining service of process from July through early September, as the 120-day deadline continued to approach.[8] *Id.*

---

[8]  The record reveals that the Lenoirs sought to serve process on Matthews before October 18, 2012, the date on which the 120-day deadline expired. They did not, however, alert the trial court to their difficulty in doing so in light of the 120-day deadline to serve an expert report. When the Lenoirs initially filed their lawsuit, they did not list a residence for Matthews for service of process; they listed the address for U.T. Physicians. They also did not attempt to serve her personally; instead, they requested service of process by certified mail, return receipt requested. U.T. Physicians filed an answer on July 20, 2012. But there is no evidence that the Lenoirs informally sought information from U.T. Physicians to locate Matthews or to confirm that she was still its employee. On July 26, the Lenoirs' counsel checked at the courthouse to see whether Matthews had been served, but the certified mail receipt had not yet been returned. On August 6, the Lenoirs' counsel confirmed that the receipt had been returned but did not review the signed receipt to confirm who had signed it. The Lenoirs' counsel then had informal conversations with the attorney general's office but the attorney general refused to accept service on Matthews's behalf. On September 9, the attorney general's office advised the Lenoirs' counsel that Matthews had not signed the

In conclusion, the *Zanchi* concurring opinion does not provide any support for the Lenoirs. And the Lenoirs cite no other legal authority to support their contention that their level of persistence in obtaining service should be equated to the level of diligence sufficient to raise a due process claim as highlighted in *Zanchi*. Accordingly, we conclude that they waived their due process argument on appeal.

Having concluded that the Lenoirs failed to timely serve a chapter 74 expert report and that a dismissal of the Lenoirs' claims for failure to serve a timely expert report would not violate the open courts or due process provisions of the Texas Constitution, we further conclude that the trial court abused its discretion in denying Matthews's motion to dismiss. Although we recognize the harshness of dismissing the Lenoirs' claims against Matthews, we are bound by the Legislature's public policy decisions regarding expert reports. *Cf. Stockton*, 336 S.W.3d at 619 (rejecting open-courts challenge, noting that legislature "has chosen to commence the 120-day period from the date of filing, and 'we are not free to rewrite the statutes to reach a result we might consider more desirable . . . .'" (citation omitted)). And while the Legislature's recent decision to amend the 120-day deadline to prevent the expert-report-filing deadline from passing before a defendant has filed a response might have enabled the Lenoirs to avoid dismissal,

certified mail receipt, Matthews was no longer employed by U.T. Physicians, and the return receipt was signed by another person.

21

we are likewise bound by the Legislature's decision that the amendment be given a September 1, 2013 effective date instead of becoming effective immediately. We also recognize that although the Lenoirs may not pursue their claims against Matthews individually, they may still pursue their claims against her employer.

Matthews requests that we remand the case to the trial court with instructions to determine her request for attorneys' fees and costs pursuant to section 74.351(b) of the Texas Civil Practice and Remedies Code. *See* Act of Sept. 1, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 TEX. GEN. LAWS 1590 (amended 2013). The Lenoirs have not identified any authority granting us discretion to deny this request.

## Conclusion

We reverse the trial court's order denying Matthews's motion to dismiss, render judgment on Matthews's behalf, and remand for proceedings consistent with this opinion.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

22