**Reversed and remanded and Memorandum Opinion filed November 4, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00136-CV

**MEMORIAL HERMANN HOSPITAL SYSTEM D/B/A MEMORIAL HERMANN MEMORIAL CITY HOSPITAL, Appellant**

**V.**

**BRENDA PONCE AND RICCO GONZALEZ, AS NATURAL PARENTS, NEXT FRIENDS AND LEGAL GUARDIANS OF E.G., A MINOR, Appellees**

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2012-74315**

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, appellant Memorial Hermann Hospital System challenges the trial court's denial of its Texas Civil Practice and Remedies Code section 74.351(b) motion to dismiss all claims brought by appellees Brenda Ponce and Ricco Gonzalez, as natural parents, next friends, and legal guardians of E.G., a

minor.[1] Because appellees' suit is a health care liability claim and they failed to timely serve an expert report, we reverse the trial court's order denying Memorial's motion to dismiss and remand to the trial court for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2004, Brenda Ponce gave birth to E.G. at Memorial Hermann Hospital. According to appellees' fourth amended petition, Ponce and E.G. were "negligently cared for" by Memorial during the delivery. Appellees allege that E.G. suffered brain damage as a result of Memorial's negligence.

On December 19, 2012, appellees filed an original petition for mandamus to obtain a fetal heart monitor strip that was not included in labor and delivery records previously obtained from Memorial. The original petition for mandamus was filed pursuant to chapter 241 of the Texas Health and Safety Code, as were the first, second, and third amended petitions. Appellees alleged that Memorial failed to preserve E.G.'s fetal heart monitor strip as required by Health and Safety Code section 241.103. They further alleged that Memorial violated Health and Safety Code section 241.156(a)[2] when the hospital destroyed or lost E.G.'s fetal heart monitor strip. Appellees admitted below that the purpose of filing the petition for mandamus was to engage in presuit discovery before filing a health care liability claim against Memorial.

---

[1] Unless otherwise specified, all statutory references in this opinion are to the Texas Civil Practice and Remedies Code.

[2] Section 241.156(a) of the Texas Health and Safety Code grants patients aggrieved by a violation of Health and Safety Code sections 241.151–241.156, relating to the unauthorized release of confidential information, the right to bring an action for injunctive relief and for damages resulting from the unauthorized release. Tex. Health & Safety Code Ann. § 241.156(a) (West 2010).

On September 16, 2013, appellees nonsuited their Health and Safety Code claims and filed their fourth amended petition, in which they alleged that Memorial's negligence during E.G.'s delivery caused his brain damage. Appellees served Memorial with an expert report on November 19, 2013. Memorial objected to the expert report and filed a motion to dismiss appellees' claims pursuant to section 74.351(b). Memorial argued that appellees had not timely served the expert report. The trial court denied the motion to dismiss on January 27, 2014, and Memorial timely filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2014).

## II.   STANDARD OF REVIEW

We normally review a trial court's ruling on a motion to dismiss under an abuse-of-discretion standard. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). When determining whether chapter 74 applies, however, we must engage in statutory interpretation, which involves a question of law we consider de novo.[3] *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012); *Shanti v. Allstate Ins. Co.*, 356 S.W.3d 705, 710 (Tex. App.— Houston [14th Dist.] 2011, pet. denied).

---

[3] Because this is a question of law, appellees' assertion that Memorial judicially admitted the claim at issue is not a health care liability claim is incorrect. "[W]e are not bound by either party's characterization of the claims." *Shanti v. Allstate Ins. Co.*, 356 S.W.3d 705, 713 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). A party can judicially admit questions of fact, not questions of law. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) ("A judicial admission that is clear and unequivocal has conclusive effect and bars the admitting party from later disputing the admitted *fact*." (emphasis added)); *see, e.g.*, *Jackson v. Tex. S. Univ.-Thurgood Marshall Sch. of Law*, 231 S.W.3d 437, 440 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (party's admission stating conclusion of law was not subject to judicial admission).

## III.   DISCUSSION

## A.    Appellees' lawsuit is a health care liability claim.

Memorial asserts that appellees' petition for mandamus is a health care liability claim because appellees allege a departure from accepted standards of professional or administrative services directly related to health care. We agree with Memorial that appellees' suit is a health care liability claim, but for a different reason, which we explain below.

The duty to serve an expert report applies only to those plaintiffs seeking recovery in a "health care liability claim." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2014). A "health care liability claim" is:

> a cause of action against a health care provider or physician for treatment, lack of treatment or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (West Supp. 2014). This definition consists of three elements:

> (1) a physician or health care provider must be a defendant;
>
> (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or administrative services directly related to health care; and
>
> (3) the defendant's act or omission complained of must proximately cause the injury to the claimant.

*Williams*, 371 S.W.3d at 179–80. The parties do not dispute that Memorial is a health care provider; accordingly, our discussion will focus on the two remaining elements.

4

***1.*** ***The essence of appellees' claim is Memorial's alleged departure from accepted standards of medical care.***

When analyzing whether the second element applies to a claim, we look to the essence or underlying nature of that claim. *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005). We must examine the allegations that form the "cause of action." *Shanti*, 356 S.W.3d at 711. "Cause of action" in this context means "a fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief" or a "group of operative facts giving rise to one or more bases for suing." *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008) (quoting *A.H. Belo Corp. v. Blanton*, 129 S.W.2d 619, 621 (Tex. 1939) and *Black's Law Dictionary* 235 (8th ed. 2004)). In keeping with this understanding, we must look to the facts upon which relief is sought, rather than the manner in which the cause of action is pleaded. *Shanti*, 356 S.W.3d at 711. "Plaintiffs cannot use artful pleading to avoid the [expert-report] requirements when the essence of the suit is a health care liability claim." *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004). Nor can a party split or splice its suit "into a multitude of other causes of action with differing standards of care, damages, and procedures [to] contravene the Legislature's explicit requirements" when "the gravamen or essence of [the] cause of action is a health care liability claim." *Yamada*, 335 S.W.3d at 197. In short, to determine whether a suit is a health care liability claim, we must look at facts, not filings. *See Jorden*, 249 S.W.3d at 421.

Although in their original petition for mandamus appellees only asserted a violation of Chapter 241 of the Texas Health & Safety Code, we cannot allow this artful pleading to distract from the essence of their suit. *See Diversicare*, 185 S.W.3d at 851; *see also Trevino v. Ortega*, 969 S.W.2d 950, 953 (Tex. 1998)

5

(indicating that a violation of an obligation under chapter 241 of the Texas Health and Safety Code should be resolved within the underlying suit, not as a separate cause of action). Appellees have amended their petition multiple times. Initially, they sought a court order requiring Memorial to produce the missing fetal heart monitor strip. They now seek, starting with their fourth amended petition,[4] damages under a negligence theory of recovery. This change from a plea for mandamus relief to a negligence action indicates that, at the time appellees filed their original petition for mandamus, facts existed entitling appellees to institute and maintain an action against Memorial for a claimed departure from accepted standards of medical care, which fits within the statutory definition of a "health care liability claim." *See, e.g.*, *Jorden*, 249 S.W.3d at 422 (petition to conduct presuit depositions for the purpose of investigating potential negligence claim against health care provider was necessarily a health care liability claim).

Evidence in the record supports the conclusion that appellees could have instituted and maintained a cause of action for negligence at the time they filed their petition for mandamus. *See Victoria Gardens of Frisco v. Walrath*, 257 S.W.3d 284, 289 (Tex. App.—Dallas 2008, pet. denied) (assessing statements in plaintiff's later filings to determine whether plaintiff alleged a health care liability claim in an earlier filing). In their original, first amended, and second amended

---

[4] Appellees filed their fourth amended petition on September 16, 2013. On the same day, appellees also filed a document titled "Plaintiffs' Original Chapter 74 Health Care Liability Claim Petition." Both the fourth amended petition and the "original" petition filed on September 16, 2013 have the same cause number. In substance, they are identical. However, we view the "original" petition as an anomaly and disregard it in favor of the fourth amended petition because the amended petitions filed after September 16, 2013, follow sequentially from the fourth amended petition. Additionally, the fact that appellees filed an "original" petition in conjunction with their fourth amended petition supports a conclusion that appellees were delaying their express assertion of a health care liability claim until it suited them. This conclusion is further supported by the fact that appellees were able to obtain an expert report even without the fetal heart monitor strip that ostensibly was the subject of their mandamus action.

petitions for mandamus, appellees averred, "Any further delay in obtaining these records [the fetal heart monitor strip] severely prejudice's [sic] the [appellees'] potential claims." In their second amended petition for mandamus and their motion for new trial, appellees stated, "[Appellees] are investigating a potential Chapter 74 healthcare liability claim involving a profoundly brain damaged child that was born in 2004." Additionally, appellees' attorney acknowledged during the motion-to-dismiss hearing that he was "attempting to engage in presuit discovery" when he filed the original petition for mandamus. In their third amended petition, appellees seek relief based on Texas Health and Safety Code section 241.156(a), omitting all references to a "potential chapter 74 health care liability claim," and opting instead to affirmatively disclaim any relationship with chapter 74:

> In this lawsuit, [appellees] are not attempting to recover damages for an alleged injury or death of a claimant. In this lawsuit, [appellees] are not alleging that [Memorial] violated any accepted standard of medical or health care. [Appellees] are not alleging that the loss or destruction of their fetal heart monitor strips "proximately resulted in injury to or death of a claimant." In this lawsuit [appellees] are not alleging that [Memorial] committed a tort or breached a contract.

In their fourth amended petition, appellees abandoned the presuit investigation pretense entirely, expressly asserting a chapter 74 health care liability claim against Memorial for its alleged negligence during E.G.'s delivery.

Appellees' petition for mandamus and their negligence suit are based on the same underlying facts—namely, that Memorial's alleged negligence during E.G.'s delivery caused the child to suffer brain damage. Despite their initial effort to couch their claim as a petition for mandamus seeking medical records, the essence or gravamen of appellees' claim is Memorial's alleged departure from accepted standards of ordinary care in treating and caring for E.G. and Ponce during E.G.'s delivery. The claim therefore satisfies the second element of a health care liability

7

claim. *See Williams*, 371 S.W.3d at 180.

### 2. *Memorial's alleged departure from accepted standards of care proximately caused E.G.'s alleged injury.*

To satisfy the third and final element of a health care liability claim, the complained of act or omission must have proximately caused injury to the claimant. *Id.* A "claimant" is "a person . . . seeking or who has sought recovery of damages in a health care liability claim." Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(2). Appellees are claimants. They are seeking, on behalf of their child, damages in a health care liability claim.

Appellees alleged in their fourth amended petition that Memorial's negligence proximately caused the complained of injuries. While they did not state this in their original petition, appellees cannot avoid triggering chapter 74's expert-report requirement by delaying their allegation of proximate cause. *See, e.g.*, *Walrath*, 257 S.W.3d at 288–89 (plaintiff's express statement in second amended petition that she "does not now make any allegation that the [complained of act] proximately resulted in injury to the [claimant]" did not avoid health care liability claim status when she alleged proximate cause in a later amended petition). Because Memorial's alleged departure from accepted standards of medical care allegedly proximately caused E.G.'s brain injury, appellees' claim satisfies the third element. *See Williams*, 371 S.W.3d at 180.

Appellees' original petition for mandamus and their subsequent filings indicate that, at the time they filed their original petition, facts existed entitling them to institute and maintain an action against Memorial, a health care provider, for alleged acts of negligence in treating Ponce and E.G. that allegedly caused E.G.'s brain injury. Appellees' cause of action against Memorial is a health care liability claim.

**B.     Appellees did not timely serve an expert report on Memorial.**

Having concluded that appellees' suit against Memorial is a health care liability claim, we must determine whether the expert report served on Memorial was timely. At the time appellees filed their original petition for mandamus, section 74.351 required all claimants asserting a health care liability claim to serve each defendant with a medical expert report not later than 120 days after the date the original petition was filed. Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590 (amended 2013) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2014)).[5] If a plaintiff bringing a health care liability claim fails to timely serve an expert report, then the trial court must dismiss the claim with prejudice and award reasonable attorney's fees and costs to the defendant health care provider. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b).

Appellees did not timely serve an expert report on Memorial. Appellees triggered the expert-report timing requirements of section 74.351(a) when they filed their original petition for mandamus. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 792 n.1 (Tex. 1991) (original proceeding for a writ of mandamus initiated in a trial court is "a civil action subject to trial and appeal on substantive law issues and the rules of procedure as any other civil suit"). Appellees filed their original petition on December 19, 2012. They did not serve Memorial with an expert report until November 19, 2013, 335 days after filing the original petition. The trial court erred when it did not enter an order dismissing appellees' suit with prejudice and awarding reasonable attorney's fees and costs to Memorial.

---

[5] Appellees filed their original petition on December 12, 2012. The current version of section 74.351(a) became effective on September 1, 2013. Act of May 24, 2013, 83d Leg., R.S., ch. 870, § 3(b), 2013 Tex. Gen. Laws 2217. Therefore, the former section 74.351(a) language applies to appellees' claims. *See id.*; *Matthews v. Lenoir*, 439 S.W.3d 489, 494 n.5 (Tex. App.— Houston [1st Dist.] 2014, pet. filed).

## IV. CONCLUSION

The essence of appellees' claim is Memorial's alleged departure from accepted standards of medical care during E.G.'s delivery, which allegedly resulted in E.G.'s brain damage. Appellees' suit is therefore a health care liability claim subject to the section 74.351(a) expert-report requirements. Appellees were required to serve Memorial with an expert report within 120 days of filing their original petition. Appellees did not serve Memorial with an expert report until 335 days after filing their original petition. The trial court erred when it did not dismiss appellees' claim with prejudice and award reasonable attorney's fees and costs to Memorial.[6]

We sustain Memorial's sole issue on appeal, reverse the trial court's order, and remand to the trial court with the following instructions: (1) dismiss appellees' claims against Memorial with prejudice under section 74.351(b); (2) conduct further proceedings to determine the amount of reasonable attorney's fees that should be awarded to Memorial under the statute; and (3) award Memorial reasonable attorney's fees and court costs.


/s/     Marc W. Brown
        Justice


Panel consists of Chief Justice Frost and Justices Donovan and Brown.

---

[6] Memorial requested attorney's fees and costs in its motion to dismiss.