Carlos **SALAZAR**, Appellant,

v.

**COASTAL CORPORATION**, Coastal States Trading, Inc., Coastal Petroleum Marketing, N.V., and Coastal Petroleum, N.V., Appellees.

No. 14–95–00310–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 20, 1996.

James H. Miller, John O. Tyler, Micky N. Das, Houston, for appellants.

Mark J. Tempest, Marcheta Leighton-Beasley, Houston, for appellees.

Before MURPHY, C.J., and AMIDEI and ANDERSON, JJ.

## OPINION

AMIDEI, Justice.

This appeal from a summary judgment in a suit arising from the termination of an agency relationship presents the questions of whether Texas law should be applied to govern the parties' agreement, whether material fact questions exist, and whether discovery was properly denied. Appellant, Carlos Salazar ("Salazar"), sued appellees, the Coastal Corporation ("TCC"), and its subsidiaries, Coastal States Trading, Inc. ("CSTI"), and Coastal Petroleum Marketing N.V. n/k/a Coastal Petroleum N.V. ("CPNV"), after CSTI terminated Salazar's agency relationship with it in Ecuador. The trial court granted summary judgment for appellees, and Salazar appeals in three points of error. We reverse and remand.

Salazar began acting as CSTI's legal representative in Ecuador in 1986. He entered into an agreement with Mobile Bay Refining Company ("Mobile Bay"), which acted as CSTI's general agent in Latin America. Mobile Bay's contract with CSTI expired in mid–1990. On July 9, 1990, CSTI and Salazar entered an agency agreement, executed in Miami, Florida, continuing Salazar's services for CSTI ("the agency agreement"). Salazar was to receive a monthly retainer of $1,500, to be recovered from commissions paid to him based on $.03 per barrel of crude or refined petrochemical products that were sold to or purchased from Ecuador's government-controlled oil company, PetroEcuador. CSTI notified PetroEcuador that Salazar would continue as its local representative in Ecuador.

The agency agreement provided for an initial term of six months, and it could be renewed from year to year or cancelled by either party on thirty days written notice. It is undisputed that no renewals were entered. It is also undisputed that after the initial six-month period, the parties continued to operate under the terms of the agency agreement with respect to Salazar's compensation. Both parties continued the agency relationship until February 18, 1992, when CSTI notified Salazar that it decided to "wind up its operations in Ecuador," and the agency relationship would terminate in thirty days. The day before, on February 17, TCC requested and received authorization from PetroEcuador for CPNV to be permitted to respond to PetroEcuador's tender offers on TCC's behalf. After Salazar's agency was terminated, TCC began doing business in Ecuador through CPNV.[1]

Salazar filed suit alleging breach of contract, quantum meruit, tortious interference, breach of fiduciary duty, fraud, constructive fraud, negligence, negligent misrepresentation, conspiracy and promissory estoppel. He also claimed that all of the Coastal entities were alter egos of one another. Salazar alleged that the terms of his agreement were orally modified to include a promise that he would remain the agent for any and all of the Coastal companies so long as any Coastal company did business in Ecuador. He claimed that his termination was a "charade" to "dump" him and avoid compensating him for the value of his services. He contended that Coastal falsely told him none of its companies would be doing further business in Ecuador. Salazar asserted that approximately two months after his agency terminated, as a result of his efforts, CPNV obtained a contract with PetroEcuador for

---

1. CPNV is a wholly-owned subsidiary of Coastal Aruba Refining Company N.V., which in turn is wholly owned by Coastal Aruba Holding Company N.V. Coastal Aruba Holding Company N.V. is owned by Coastal Securities Company Limited and Coastal Stock Company Limited, which are each wholly-owned subsidiaries of Coscol Petroleum Corporation. Coscol Petroleum Corporation is a wholly-owned subsidiary of TCC. CPNV was incorporated in 1991 as Coastal Petroleum Marketing N.V., and its name was changed to CPNV on February 17, 1992.

12,000 barrels per day and appellees refused to pay the commissions owed to him.

Appellees moved for summary judgment, and Salazar requested the trial court to take notice of and apply Ecuadorian law. Responses to both motions were filed, and both motions were denied by Judge Eileen O'Neill on December 27, 1994. On January 12, 1995, shortly before the trial setting, the new presiding judge of the 190th District Court, Judge John Devine, held a hearing on appellees' motion to quash depositions and also considered other pending motions. During this hearing he granted appellees' request to reconsider their summary judgment motion, denied Salazar's motion to reconsider application of Ecuadorian law, denied Salazar's motion to compel discovery, and granted appellees' motion to quash depositions. The court then entered its take nothing judgment against Salazar, and this appeal resulted.

## CHOICE OF LAW

■ Because determination of the proper choice of law is necessary before we may address the propriety of the summary judgment granted by the trial court, we first consider Salazar's second point of error contending that the trial court erred in overruling his motion to apply Ecuadorian law. The question of which law to apply is a question of law for the court and is subject to *de novo* review. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984); *Hull & Co. v. Chandler*, 889 S.W.2d 513, 517 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *see also* Tex.R. Civ. Evid. 203.

■ In the agency agreement, the parties provided that Texas law would control. While it is true that the agency agreement expired under its own terms and no written renewal was executed, both parties continued to act as if the agreement were still in effect. It is well settled in Texas that a continuance of the employment relationship in accordance with the terms of a written employment contract after the contract has expired by lapse of time is a continuance of the old contract as a matter of law. *Southwest Airlines Co. v. Jaeger*, 867 S.W.2d 824, 833 (Tex.App.—El Paso 1993, writ denied); *Fenno v. Jacobe*, 657 S.W.2d 844, 846 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). There is nothing in the record indicating the parties intended to change the choice of law provision in the agency agreement after its expiration. Therefore, we conclude the parties were continuing to operate under their contractual Texas choice of law provision.

■ Under the concept of "party autonomy," we respect the parties' choice of law unless the chosen law has no relation to the parties or the agreement, or their choice would offend the public policy of the state whose laws otherwise ought to apply. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex.1990), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); *see also First Commerce Realty Investors v. K–F Land Co.*, 617 S.W.2d 806, 808–09 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (recognizing that the parties' express agreement controls if the contract bears a reasonable relation to the chosen state and there is no countervailing public policy demanding otherwise). This rule has been codified in Texas as:

> [W]hen a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties.

Tex. Bus. & Com.Code Ann. § 1.105(a) (Vernon 1994).

■ Texas has adopted Section 187 of the Restatement (Second) of Conflict of Laws ["Restatement"] concerning contractual choice of law provisions. *DeSantis*, 793 S.W.2d at 677. Section 187 provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

Restatement § 187(1). Here, the parties not only could have resolved the issue of termination of the contract by an explicit provision, they did so. The parties expressly agreed the contract could be terminated by either party on thirty days notice. Thus, according to the party autonomy rule as ex-

pressed in the RESTATEMENT, Texas law should govern this dispute.

In addition, there is a reasonable relationship to Texas. The state where a company has its principal place of business has a reasonable relationship to the parties and transaction. *Chase Manhattan Bank, N.A. v. Greenbriar N. Section II,* 835 S.W.2d 720, 725 (Tex.App.—Houston [1st Dist.] 1992, no writ); *First Commerce Realty,* 617 S.W.2d at 809. Both TCC and CSTI have their principal places of business in Texas.

Salazar argues that, under the general rule, the place of performance is determinative of which law is applicable. Virtually all of Salazar's services were rendered in Ecuador. Section 196 of the RESTATEMENT provides that contracts for the rendition of services, *in the absence of an effective choice of law by the parties,* are enforced under the laws of the state where the contract requires that the services be rendered, unless some other state has a more significant relationship. *Cf. Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50, 53 (Tex.1991) (holding that the place of performance is given paramount importance where there is no choice of law provision in the contract). Section 196 is inapplicable because Texas law is specified as the choice of law in the parties' agreement in this case. Since there is a reasonable relationship to Texas, we need only ascertain whether there is any countervailing public policy that requires the application of Ecuadorian law.

According to the English translations of relevant Ecuadorian law supplied to the trial court, Ecuador requires foreign companies to appoint a legal representative in Ecuador. In addition, Ecuadorian law contains provisions governing the relationship between foreign countries and their agents in Ecuador.

In Ecuador, it appears that an agency contract can only be terminated for cause, and then after a judicial proceeding. One of the causes listed, however, is the "termination of activities." [2] Here, CSTI terminated activities in Ecuador. Thus, Ecuador would not appear to have a policy reason for objecting to termination of Salazar's agency contract. Had CSTI gone through the judicial proceeding required under Ecuadorian law, Salazar would apparently have no claim under that country's laws for wrongful termination of his contract. In Texas, agency relationships can be terminated freely in accordance with the contract terms. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.,* 793 S.W.2d 660, 665 (Tex.1990). Under the facts presented here, either Texas or Ecuador permit termination of the agency agreement. We determine that Salazar failed to establish that application of Texas law would conflict with a fundamental policy of Ecuador.

■ Salazar also contends that the situs of the alleged torts requires Ecuadorian law to be applied. He raises this argument for the first time on appeal, and therefore has waived this contention. *See Andrews v. ABJ Adjusters, Inc.,* 800 S.W.2d 567, 568–69 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

We hold that the trial court correctly determined that Texas law governs this dispute and overrule point of error two.

## SUMMARY JUDGMENT

In Salazar's first point of error, he generally attacks the trial court's granting of summary judgment, raising specific complaints in six sub-points. He argues there are genuine issues of material fact as to: (1) the terms and conditions of his contract and whether

2. The record contains a translation of relevant portions of the LAW OF CORPORATIONS, of the Republic of Ecuador, Official Register No. 389 (July 28, 1977). There is also a "free" translation of the PROTECTIVE LAW FOR REPRESENTATIVES, AGENTS, OR DISTRIBUTORS OF FOREIGN COMPANIES, of the laws of the Republic of Ecuador, Official Register No. 245 (December 31, 1976). According to article three, the following are considered just cause for unilateral termination by the principal of an agency contract: (a) the agent's failure to fulfill his contractual obligations; (b) if the agent's acts or

omissions adversely affect the interest of the enterprise; (c) the principal's bankruptcy or insolvency; and (d) the liquidation or termination of activities.

Salazar contends that while CSTI terminated its activities in Ecuador, TCC did not. He argues that TCC continued to operate in Ecuador through CPNV. He has not argued, however, that Ecuadorian law recognizes alter ego theories. Therefore, this contention does not support application of Ecuadorian law under these facts.

appellees breached that contract; (2) alter ego; (3) quantum meruit; (4) breach of fiduciary duty; (5) other tort theories; and (6) conspiracy and tortious interference.

A summary judgment disposing of the entire case is proper only if, as a matter of law, the plaintiff could not succeed upon any theories pleaded. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). To prevail, a defendant must "establish as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action." *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970). Once the defendant has produced competent evidence to negate a necessary element of the plaintiff's cause of action, the burden shifts to the plaintiff to introduce evidence raising a fact question. *Goldberg v. United States Shoe Corp.,* 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). All doubts about the existence of a genuine issue of material fact are resolved against the movant. *Clark v. Pruett,* 820 S.W.2d 903, 905 (Tex.App.—Houston [1st Dist.] 1991, no writ). Every reasonable inference from the evidence must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Continental Casing Corp. v. Samedan Oil Corp.,* 751 S.W.2d 499, 501 (Tex.1988). Evidence which favors the movant will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

Salazar first argues that there are material fact questions concerning his agency agreement. He contends CSTI breached the agency agreement by failing to pay him commissions for contracts that he had been responsible for obtaining, even though they were executed after his termination. CSTI provided the trial court with summary judgment proof from Salazar's deposition testimony where Salazar admitted he had received payments for all amounts for which he had submitted invoices. CSTI contends this testimony established it did not breach the agreement because it was obligated to pay commissions only if invoices were submitted. The agreement provided:

The commission net of retainer fee, payable to AGENT will be US$0.03 per barrel of crude or petroleum products bought from or sold to PETROECUADOR in connection with [his] efforts on behalf of [CSTI] *upon receipt of invoice with support documentation.* (emphasis added).

Salazar provided in his response a copy of an offer made by CPNV on February 19, 1992, the day after he was notified of his termination, which he claimed resulted in a contract dated April 22, 1992. Appellees furnished a responsive affidavit from the custodian of records for CPNV that the February 19, 1992, offer to which Salazar referred did not result in a PetroEcuador contract being awarded to CPNV. The affidavit does not assert, however, that there were no contracts awarded after Salazar's termination which resulted from his efforts.

Salazar argues that there is a material fact question as to the terms of the implied contract under which the parties operated after expiration of the initial six-month term of the written agency agreement. An implied contract arises when circumstances disclose that, according to the parties' course of conduct and common understanding, there was a mutual intent to contract. *City of Houston v. First City,* 827 S.W.2d 462, 473 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Whether mutual assent to contract exists is a question of fact. *Id.*

Salazar admitted at his deposition that nothing in the written contract prohibited his termination on thirty days notice. However, he claimed that he believed he would be TCC's agent in Ecuador as long as any Coastal entity did business there. He testified that he was led to believe that he would be the Coastal agent in Ecuador so long as he performed his duties, based on his continuous relationship with Coastal for six years and the fact he had never been informed there were problems with his performance. He contends that appellees misrepresented to him that all Coastal entities were ceasing business in Ecuador. He relied on this misrepresentation in failing to assert his claims for additional commissions. Therefore, there are disputed fact questions as to the terms of

Salazar's implied agency agreement and whether Salazar is entitled to commissions for contracts executed after his termination.

■ Fact questions also exist as to Salazar's alternative claim for quantum meruit. Appellees primarily argued that Salazar could have no quantum meruit cause of action because an express contract existed. Appellees rely on the general rule as expressed in *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex.1988). The court in *Truly* acknowledged, however, that there are instances where recovery under quantum meruit is permitted despite the existence of an express contract covering the subject matter of the claim. *Id.* Appellees did not negate these exceptions to the general rule, and therefore, did not negate Salazar's quantum meruit claim as a matter of law.

■ Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992). To recover under quantum meruit, a plaintiff must establish that: (1) valuable services and/or materials were furnished, (2) to the party sought to be charged, (3) which were accepted by the party sought to be charged, and (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient. *Id.* Appellees' only summary judgment proof as to Salazar's quantum meruit claim is Salazar's deposition testimony that he was CSTI's agent and he was registered with PetroEcuador as such, which was offered to show Salazar did not perform services for CPNV or TCC. Salazar's deposition testimony shows, however, that he believed he was working on behalf of all Coastal entities in Ecuador and expected compensation for the work he did on their behalf. Thus, appellees' summary judgment proof failed to negate Salazar's claim as a matter of law.

■ In addition, there are fact questions remaining on Salazar's tort claims, including fraud, negligent misrepresentation, promissory estoppel, and negligence. Appellees contend all these claims are based on Salazar's contention that he was told he would contin-

ue to be the agent for all Coastal entities operating in Ecuador "for life." Salazar testified by deposition that he spoke to no one at Coastal, CSTI or Mobile Bay prior to beginning his work as CSTI's agent in 1986. He also acknowledged he had no conversations with anyone concerning the agency agreement after signing it on July 9, 1990. Thus, appellees assert there could have been no misrepresentations made.

Appellees' summary judgment proof fails to negate Salazar's misrepresentation claims as a matter of law. Salazar testified the agency agreement was presented to him for signature by Todd Peterson, a CSTI employee. Salazar denied discussing the agreement with CSTI's vice-president, Richard Green. Green, however, testified by deposition that he fully discussed the agreement with Salazar. Salazar also maintains that he was told when he was terminated that all Coastal entities were ceasing business in Ecuador, which is not controverted by appellees. His deposition testimony shows he was "led to believe" he would continue to be the "Coastal man" in Ecuador. After indulging all inferences in favor of Salazar as the nonmovant, we conclude appellees have not negated that the statements upon which Salazar's claims rested may have been made.

■ There is no summary judgment proof at all regarding Salazar's negligence claim. It is not clear exactly what Salazar's specific contentions are regarding appellees' negligent conduct, but they are apparently more that merely a negligent misrepresentation claim because he made separate allegations in his pleadings. If Salazar's allegations were unclear, special exceptions were required before summary judgment may be granted. *See Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). We find no record of special exceptions in this case.

■ Salazar also pleaded that the various Coastal entities are alter egos of one another. The doctrine of "alter ego" is applicable "where a corporation is organized and operated as a mere tool or business conduit of another corporation." *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986). Alter ego is often established by evidence

showing a blending of identities, or a blurring of lines of distinction between corporations. *Hideca Petroleum Corp. v. Tampimex Oil Internat'l, Ltd.*, 740 S.W.2d 838, 844 (Tex.App.—Houston [1st Dist.] 1987, no writ). Important factors in making a determination of alter ego include the identity of shareholders, directors, officers, and employees, or failure to distinguish in ordinary business between different entities. *Id.* When there is such unity between the corporations that the separateness between them has ceased, holding just one of the corporations liable results in injustice. *Castleberry*, 721 S.W.2d at 272.

Appellees did not attempt to negate alter ego in their motion for summary judgment. Instead, they contend alter ego is not a separate cause of action and there is no need to reach this contention if all of Salazar's causes of action are negated. We have found fact questions as to those of Salazar's claims addressed in this opinion. Therefore, the existence of material fact questions as to alter ego, as demonstrated by the summary judgment proof Salazar provided, also precludes summary judgment. Salazar cites to evidence that when PetroEcuador required financial information for CSTI, he was furnished information on TCC, which he then supplied to PetroEcuador. In addition, Salazar's responsive proof included letters concerning different Coastal entities' dealings with PetroEcuador, from the same employees, yet written on behalf of TCC, CSTI and CPNV. Richard Green testified he served as an officer of several Coastal entities at the same time, but was only paid by one. Thus, there is some evidence TCC, CSTI and CPNV had the same employees and failed to maintain a distinction between the entities.

Because appellees failed to establish as a matter of law that Salazar could not succeed on any theory pleaded, we hold that the trial court erred in granting summary judgment. We sustain Salazar's first point of error.

## DISCOVERY

In his third point of error, Salazar complains that the trial court erred in granting appellees' motion to quash the depositions of appellees' corporate representatives and in denying his motion to compel production of documents he claims are relevant to his alter ego and breach of contract allegations. He asserts that the documents serve to refute appellees' allegations that the Coastal entities are separate companies acting independently of one another and that CPNV's subsequent business in Ecuador was not a continuation of earlier business conducted by CSTI. Salazar also contends the documents are needed to impeach appellees' witnesses.

Salazar obtained from PetroEcuador copies of briefs prepared by appellees' expert, Dr. Ider Valverde Farfan ("Dr. Valverde"), an Ecuadorian attorney, regarding disputes between appellees and PetroEcuador. Appellees designated Dr. Valverde as a testifying expert, which subjects his work product to discovery. *See* Tex.R. Civ. P. 166b(2)(e)(1); *see also Tom L. Scott, Inc. v. McIlhany*, 798 S.W.2d 556, 560 (Tex.1990) (prohibiting redesignation of testifying expert as consulting expert to protect from discovery). In his Fourth Request for Production, Salazar sought production of documents related to the brief, including correspondence between PetroEcuador and various Coastal entities either prepared or reviewed by Dr. Valverde. Appellees filed objections to production, including attorney-client and attorney work product privileges. Salazar then filed a Motion to Compel, and requested the court to require appellees to prove their privilege claims in accordance with Rule of Civil Procedure 166b(4).[3] Salazar asserted that

---

**3.** Rule 166b(4) provides in relevant part as follows:

[A] party seeking to exclude any matter from discovery on the basis of an exemption of immunity from discovery, must specifically plead the particular exemption or immunity from discovery relied upon and at or prior to any hearing shall produce any evidence necessary to support such claim either in the form of affidavits served at least seven days before the hearing or by testimony. If the trial court determines that an in camera inspection and review by the court of some or all of the requested discovery is necessary, the objecting party must segregate and produce the discovery to the court in a sealed wrapper or by answers made in camera to deposition questions, to be transcribed and sealed in event the objection is sustained.

Tex.R. Civ. P. 166b(4).

documents reviewed or prepared by Dr. Valverde were not exempt from discovery under the fraud exception to the attorney-client privilege. *See* TEX.R. CIV. EVID. 503(d)(1). After the trial court notified appellees it denied Salazar's motion to apply Ecuadorian law, appellees filed supplemental objections arguing that because Dr. Valverde would no longer be called to testify as an expert on Ecuadorian law, any documents he reviewed in connection with his proposed testimony were not relevant.

Shortly before the trial setting, Salazar noticed appellees for depositions of their corporate representatives. Included with the deposition notice was a subpoena duces tecum requesting the same documents demanded in Salazar's Fourth Request for Production.[4] Appellees filed a Motion to Quash these depositions, claiming the documents requested in the subpoena were not relevant because they were generated more than a year after suit was filed. They also reasserted the attorney-client privilege. The trial court conducted a hearing on Salazar's motion to compel and appellees' motion to quash at the same time it heard appellees' motion to reconsider the denial of their motion for summary judgment. At the conclusion of the hearing, the court denied Salazar's motion to compel and quashed the depositions.

The standard of review of a trial court's pretrial discovery order is abuse of discretion. *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991). A trial court abuses its discretion when it reaches a decision so arbitrary or unreasonable as to amount to a clear and prejudicial error of law. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex. 1985); *Riggs v. Sentry Ins.,* 821 S.W.2d 701,

709 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

Dr. Valverde represented himself as the attorney-in-fact for TCC in disputes involving contracts executed by CSTI and CPNV. He prepared two briefs on behalf of "TCC." The brief dated March 10, 1994 concerns a dispute between TCC and PetroEcuador on a contract where CSTI sold PetroEcuador contaminated aviation gasoline (AVgas).[5] This contract was executed in May 1990, by Salazar on behalf of CSTI. Thus, even though the briefs were not prepared until much later, they concern a transaction that took place while Salazar was CSTI's agent. The briefs, and the requested documentation related to their preparation, are relevant to Salazar's claim he was actually employed by TCC. The briefs support Salazar's attempt to show that TCC was acting through CSTI and CPNV, and they controvert testimony of appellees' witnesses that the companies are separate.

Rule 166b provides that parties may obtain discovery of any matter which is "relevant to the subject matter" and is "reasonably calculated to lead to the discovery of admissible evidence." TEX.R. CIV. P. 166b(2)(a). This test is liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial. *Gutierrez v. Dallas ISD,* 729 S.W.2d 691, 693 (Tex.1987). Because Dr. Valverde's brief shows that he, as TCC's attorney, was involved in a contract dispute where the contract was executed by CSTI, this evidence is relevant to Salazar's alter ego claim. The requested documents are also reasonably calculated to lead to the discovery of other admissible evidence.

4. The parties restrict their arguments to production of the documents requested in the Salazar's Fourth Request for Production, which both sides agree are the same documents listed in the subpoena duces tecum attached to the deposition notice. Therefore, the record is sufficient for our review of Salazar's complaint as to denial of his requested production even though the deposition notice is not included in our record.

5. We discuss only the March 1994 brief, for which a translation is provided. According to

the translation, Dr. Valverde referred to himself as "attorney-in-fact" for TCC, and urged settlement of the AVgas dispute based on the "magnificent relationship" TCC had maintained with PetroEcuador for "more than twenty years." There is no translation for the other brief, apparently prepared in December 1993. Salazar contends it concerned a diesel oil contract between CPNV and PetroEcuador, and also referred to a twenty-year relationship between TCC and PetroEcuador.

We conclude that the requested discovery is relevant to Salazar's claim that TCC's operations in Ecuador were conducted through its alleged alter egos, CSTI and CPNV. Therefore, these matters are properly discoverable, unless appellees are entitled to prevail on their privilege claims.

Any party seeking to exclude documents from discovery must specifically plead the particular privilege claimed and provide evidence supporting that claim. *Loftin v. Martin*, 776 S.W.2d 145, 147–47 (Tex. 1989). The objecting party should provide evidence to the trial court in the form of affidavits or testimony establishing the claimed privilege. *State v. Lowry*, 802 S.W.2d 669 671 (Tex.1991). In some circumstances, the documents themselves may constitute sufficient proof. *Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex.1986) (per curiam). If the court determines an *in camera* inspection is necessary, the objecting party has the burden to segregate the items which they allege are exempt from discovery and tender the documents to the court. *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 n. 6 (Tex.1990); Tex.R. Civ. P. 166b(4).

Appellees provided no evidence to support their privilege and work product claims. They failed to establish that any of the documents contained confidential communications. *See* Tex.R. Civ. Evid. 503. Because appellees did not meet their burden to establish their claimed privilege, Salazar was not required to prove his claimed fraud exception. It is an abuse of discretion to deny discovery when no proof of the privilege is provided. *Weisel Enters.*, 718 S.W.2d at 58. In addition, Salazar's counsel requested appellees to produce the allegedly privileged documents for *in camera* inspection, and they did not do so. If the documents themselves are the only evidence substantiating the claim of privilege, the trial court has no choice but to review the allegedly privileged documents *in camera* when requested. The trial court's failure to conduct an *in camera* inspection under these circumstances constitutes an abuse of discretion. *Lowry*, 802 S.W.2d at 673–74.

We hold that the trial court abused its discretion in denying the requested relevant discovery without requiring the claimed privileges to be proved. Therefore, we sustain point of error three.

In conclusion, the trial court correctly determined that Texas law applies. The court below improperly denied appellant's requested discovery, however. In addition, appellees failed to establish their entitlement to judgment on all of appellant's claims as a matter of law. Because additional discovery will be completed as a result of our opinion, the entire judgment should be reversed out of fairness to appellant and in the interest of justice. *See* Tex.R.App. P. 81(b). We reverse the summary judgment and remand this cause for proceedings consistent with this opinion.