# NO. 12-23-00212-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE: LAURA LEE REDMAN, INDIVIDUALLY, RICHARD REDMAN, INDIVIDUALLY, BRIAN G. REDMAN, INDIVIDUALLY, KRISTY L. REDMAN, INDIVIDUALLY, COMMUNITY ACCESS, INC., REDMAN MANAGEMENT, LLC, AND REDMAN LEGACY, LP,* | § | |
| | § | *ORIGINAL PROCEEDING* |
| *RELATORS* | § | |

## *MEMORANDUM OPINION*

Relators, Laura Lee Redman, Richard Redman, Brian G. Redman, Kristy L. Redman, Community Access, Inc., Redman Management, LLC, and Redman Legacy, LP, filed this original proceeding in which they challenge Respondent's order compelling them to respond to written discovery.[1] We conditionally grant the writ in part.

## BACKGROUND

This original proceeding arises out of an action brought by Real Party in Interest Kenny S. Frederick (RPI) against Relators, individually and on behalf of Devon Frederick, an incapacitated person. RPI sued Relators for (among other causes) negligence, negligent undertaking, premises liability, respondeat superior, and gross negligence, all based upon personal injuries sustained by Devon from assaults perpetrated by caretakers at David House, the

---

[1] Respondent is the Honorable Austin R. Jackson, Judge of the 114th District Court in Smith County, Texas.

group home where Devon resided from January 2016 to March 2020.[2] RPI further alleges that Relators were participants in a "scheme" to monetize their respective real estate holdings (over forty different properties) by operating care facilities for intellectually disabled persons using unqualified staff, and seeks to "pierce the corporate veil" to hold the individual defendants liable for the claims against Community Access, Inc., Redman Management, LLC, and Redman Legacy, LP.

Thereafter, RPI served interrogatories and requests for production of documents on Relators. Relators' responses contained numerous objections and claims of privilege. On June 2, 2023, RPI filed a motion to compel Relators to respond to the written discovery (the Motion). The Motion repeats and elaborates upon the claims regarding the alleged scheme among Relators to realize a profit from the operation of care facilities for disabled persons by hiring inexpensive (and unfit) staff, the alleged effect of which was increased abuse and neglect of the facilities' residents such as Devon. The Motion contains a section labeled "specific items from discovery requests" that this Court reads as a list of the discovery responses the movants deemed inadequate. However, the Motion does not explain specifically *how* the responses to the listed items were inadequate, nor does it present any argument regarding Relators' objections. The Motion states only that Relators "stonewalled Plaintiffs [sic] attempts to get discovery" and "Plaintiffs' discovery requests to Defendants are reasonably calculated to lead to the discovery of admissible evidence and are not otherwise objectionable." The relief requested is similarly nonspecific, asking Respondent to "compel Defendants to file adequate responses to Plaintiffs' discovery[.]"

Relators responded to the Motion and objected again to multiple categories of requests, including those requesting (1) information about properties other than David House, (2) information for periods of time before 2016 and after 2020 (when Devon resided at David House), (3) information about financial transactions among Relators, (4) contact information for employees, and (5) information about communications between Relators and their insurers. In support of their response, Relators attached the affidavit of Laura Lee Redman, in which she

---

[2] Community Access, Inc. operated David House and employed the caretakers. Redman Legacy, LP owns the building from which David House operates and leases said building to Community Access, Inc. Redman Management, LLC is the general partner of Redman Legacy, LP, and Laura Lee Redman and Richard Redman are limited partners of Redman Legacy, LP. Brian and Kristy Redman are alleged to own several properties involved in the alleged scheme amongst the defendants.

attests to many of the facts set forth in Relators' discovery responses regarding Relators' corporate relationships.

Respondent held a hearing on the Motion at which no further evidence was accepted.[3] On July 20, 2023, he issued an order granting the Motion in its entirety. Relators subsequently filed this original proceeding, and this Court granted Relators' request for a stay of Respondent's July 20 order pending further order of this Court.

## AVAILABILITY OF MANDAMUS RELIEF

Mandamus is an extraordinary remedy. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). Generally, a writ of mandamus will issue only when the relator has no adequate remedy by appeal and the trial court committed a clear abuse of discretion. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding). The relator has the burden of establishing these prerequisites, and this burden is a heavy one. *In re Fitzgerald*, 429 S.W.3d 886, 891 (Tex. App.—Tyler 2014, orig. proceeding.); *In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 56 (Tex. 1998) (orig. proceeding). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or, stated differently, when it acts without reference to guiding rules and principles. *See In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding). When a trial court fails "to analyze or apply the law correctly," it has clearly abused its discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). "The trial court has no discretion in determining the law or applying the law to the facts." *In re Sherwin-Williams Co.*, 668 S.W.3d 368, 370 (Tex. 2023).

Generally, a relator has no adequate remedy by appeal in a discovery context when: (1) the appellate court would not be able to cure the trial court's discovery error; (2) the party's ability to present a viable claim or defense is vitiated or severely compromised by the erroneous discovery ruling to the extent that the party is effectively denied the ability to develop the merits of its case; or (3) the trial court's discovery order disallows discovery which cannot be made a part of the appellate record, thereby denying the appellate court's ability to evaluate the effect of the trial court's error. *See In re Colonial Pipeline Co.*, 968 S.W.2d at 941 (Tex. 1998). If a reviewing court concludes that a trial court's discovery order is overbroad (and therefore the trial court has abused its discretion), the order must be vacated if there is no adequate remedy on

---

[3] The transcript of the hearing is not before this Court.

appeal. ***In re CSX Corp.,*** 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding). Where a discovery order compels production of "patently irrelevant or duplicative documents," there is no adequate remedy by appeal because the order "imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party." ***Id.*** (citing ***Walker***, 827 S.W.2d at 843). Litigants have an interest in protecting their rights by not producing information that exceeds the permissible bounds of discovery under the applicable procedural rules and once a party has turned over information not relevant to a case, the trial court's error cannot be cured on appeal. *See* ***In re Prudential Ins. Co. of Am.***, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding); ***In re Mem'l Hermann Health Sys.***, 607 S.W.3d 913, 921 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding).

**MOTION TO COMPEL**

Relators contend that Respondent abused his discretion by granting RPI's motion to compel, implicitly overruling all their objections to the interrogatories and requests for production of documents.

**Applicable Law**

A trial court generally has discretion to determine the scope of discovery, but this discretion is not unlimited. ***In re Nat'l Lloyds Ins. Co.***, 532 S.W.3d 794, 802 (Tex. 2017) (orig. proceeding). "Our procedural rules define the general scope of discovery as any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought is reasonably calculated to lead to the discovery of admissible evidence." ***In re Nat'l Lloyds Ins. Co.***, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (per curiam) (internal quotation marks and citations omitted). Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. Tex. R. Evid. 401. The phrase "relevant to the subject matter" is to be broadly construed; however, the party seeking the discovery may not engage in a "fishing expedition." ***In re Nat'l Lloyds Ins. Co.***, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam); ***In re Mem'l Hermann Health Sys.***, 607 S.W.3d at 918. Discovery undertaken with the purpose of finding an issue, rather than in support of an issue already raised by the pleadings, would constitute an impermissible fishing expedition. ***In re Allstate Fire & Cas. Ins. Co.***, 617 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2021,

orig. proceeding). Discovery requests must be reasonably tailored to include only matters relevant to the case. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam). A trial court abuses its discretion if it orders discovery that exceeds what the rules of civil procedure permit. *In re N. Cypress Med. Ctr. Operating Co., Ltd.*, 559 S.W.3d 128, 130-31 (Tex. 2018) (orig. proceeding).

Generally, the party resisting discovery has the burden to plead and prove the basis of its objection. *In re GreCon, Inc.*, 542 S.W.3d 774, 780 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding). A party objecting or asserting a privilege must present any evidence necessary to support the objection or privilege. *In re United Fire Lloyds*, 578 S.W.3d 572, 580–81 (Tex. App.—Tyler 2019, no pet.). However, if the wording of the discovery requests themselves demonstrates overbreadth or irrelevance as a matter of law, supporting evidence may not be necessary.[4] *In re CAR Fin. Servs., Inc.*, No. 02-20-00157-CV, 2020 WL 4213839, at *4 (Tex. App.—Fort Worth July 23, 2020, orig. proceeding) (mem. op.); *In re Mem'l Hermann Healthcare Sys.*, 274 S.W.3d 195, 202 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Overbroad requests include those encompassing time periods, products, or activities beyond those at issue in the case—in other words, matters of questionable relevancy to the case at hand. *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 n.1 (Tex. 1999). "Discovery orders requiring document production from an unreasonably long time period or from distant and unrelated locales are impermissibly overbroad." *In re CSX Corp.*, 124 S.W.3d at 152. A central consideration in determining overbreadth is whether discovery requests could have been more narrowly tailored. *Id.* at 153.

**The Challenged Discovery**

Relators challenge the following interrogatories:

INTERROGATORY 1: Please identify the names and last known contact information for all employees and/or contract workers or any of the Redman Defendants that cared for any disabled, handicapped, or special needs individuals at any time from Jan.1, 2010 to the present. For each individual please identify their title, location where they worked, the timeframe they worked (date of hire to end date), and whether or not they are still presently employed in any capacity with any of the Redman Defendants.

INTERROGATORY 2: Please identify the names and last known contact information for all employees and/or contract workers who supervised any of the caregivers of the Redman

---

[4] Absent supporting evidence, however, an appellate court is limited to reviewing only the words of the discovery requests themselves to determine their overbreadth. *In re Mem'l Hermann Healthcare Sys.*, 274 S.W.3d 195, 202 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Defendants that cared for any disabled, handicapped, or special needs individuals at any time from Jan.1, 2010 to the present. For each individual please identify their title, location where they worked, the timeframe they worked (date of hire to end date), and whether or not they are still presently employed in any capacity with any of the Redman Defendants.

INTERROGATORY 3: Please identify the names and last known contact information for all employees and/ or contract workers who trained any of the caregivers of the Redman Defendants that cared for any disabled, handicapped, or special needs individuals at any time from Jan.1, 2010 to the present. For each individual please identify their title, location where they worked, the timeframe they worked (date of hire to end date), and whether or not they are still presently employed in any capacity with any of the Redman Defendants.

INTERROGATORY 4: Please identify the names and last known contact information for all employees and/or contract workers who hired, fired, and/or had authority to employ any of the caregivers of the Redman Defendants that cared for any disabled, handicapped, or special needs individuals at any time from Jan.1, 2010 to the present. For each individual please identify their title, location where they worked, the timeframe they worked (date of hire to end date), and whether or not they are still presently employed in any capacity with any of the Redman Defendants.

INTERROGATORY 5: Please identify the names and last known contact information for all individuals who had vice principal authority over any of the caregivers of the Redman Defendants that cared for any disabled, handicapped, or special needs individuals at any time from Jan.1, 2010 to the present. For each individual please identify their title, location where they worked, the timeframe they worked (date of hire to end date), and whether or not they are still presently a vice principal or are employed in any capacity with any of the Redman Defendants.

They further challenge production requests seeking documents regarding:

1. addresses and location information of all properties owned and/or controlled, in part whole or in part [sic], by any of the Redman Defendants where any care is provided for disabled, handicapped, or special needs individuals at any time from Jan.1, 2010 to the present.

2. addresses and location information of all properties owned and/or controlled, in part whole or in part [sic], by any of the Redman Defendants where any disabled, handicapped, or special needs individual [sic] were receiving any renumeration, funding, payment, and/or benefits for care from any state or federal government entity from January 1, 2010 to the present.

3. all money or other types of federal/state government funding or benefits which any of the Redman Defendants received as compensation for patient care, or otherwise received directly or indirectly through the individuals being cared for, from Jan. 1, 2010 to the present.

4. names and contact information of all entities that provided any accounting services for each of the Redman Defendants from Jan.1, 2010 to present.

5. all transfers of money and/or assets larger than $1000.00 per transaction between any of the Redman Defendants from Jan. 1, 2010 to present.

5. all transfers of money and/or assets larger than $1000.00 per transaction from any of the Redman Defendants to any other entity owned and/or controlled and/or set up for the benefit of any of the Redman Defendants from Jan. 1, 2010 to present [this request appears to be erroneously numbered "5"].

6. names and last known contact information for all employees and/or contract workers or any of the Redman Defendants that cared for any disabled, handicapped, or special needs individuals at any time from Jan.1, 2010 to the present, limited to those that worked at the properties listed in section 4.1(F) in Plaintiffs live petition.

7. training, licensing, and/or certifications the Redman Defendants required of its employees and/or contractors to have related to caring for any disabled, handicapped, or special needs individuals at any time from Jan.1, 2010 to the present.

…

9. all incident reports, police reports, lawsuits, investigations, and/or formal complaints which have been made since January 1, 2010 to the present, involving any of the Redman Defendants alleging any resident/patient abuse, neglect, mistreatment, and/or mishandling of any patient at any of Defendants properties.

10. all other complaints which have been made since January 1, 2010 to the present, involving any of the Redman Defendants or their vice principals, supervisors, employees, contractors, or caregivers alleging any kind of resident/patient abuse, neglect, mistreatment, and/or mishandling of any patient at any of Defendants properties.

…

13. the employment file for every caregiver, every supervisor, and every case manager for any of the Redman Defendants that ever provided care, supervision, or management over Devon.

14. all notes, memos, and correspondence between you and your insurer (both primary insurer and umbrella insurers) relating to the incident in question or the insurance coverage that is in your possession constructive or actual.

15. all employee handbooks, policy and procedure manuals, or any other policy or training material, that outline or relate to any Redman Defendant's policies, procedures, and/or training related to customer/patient care, abuse training, employee supervision, employee training, hiring, and maintenance/operation of the residential facilities owned and/or operated by Defendants from January 1, 2010 to present.

…

17. citations and/or deficiencies identified at Defendants' properties by any governmental agency since January 1, 2010.

18. all photographs, pictures, motion pictures, movies, films, or photographic material of any kind concerning, relating to, or depicting any incident where Devon was injured, the residence at issue, or the events surrounding and related to any incident where Devon was injured between January 1, 2010 and the present, or those collected pursuant to an incident report, investigation, or government inquiry.

…

22. all contracts between the Redman Defendants and any other Redman Defendant related to the properties alleged in Plaintiff's live petition.

23. all contracts between the Redman Defendants and any other Redman Defendant related to the care or housing of customers/patients.

24. all contracts between the Redman Defendants and any other entity or individual related to the care of customers/patients.

25. all contracts between the Redman Defendants and any other Redman Defendant related to the management of customers/ patients.

26. all contracts between the Redman Defendants and any other Redman Defendant related to any services provided directly or indirectly for the care of customers/patients.

27. all contracts between the Redman Defendants and any government entity related directly or indirectly to the care of customers/ patients or the properties they are in.

**Requests for Financial Information**

Relators argue that the trial court abused its discretion in compelling them to respond fully to RPI's Request for Production numbers 4, 5, 5, and 29 because the requests are overbroad and seek irrelevant financial information from Relators and unrelated entities.[5] The disputed requests for production inquire about (1) names and contact information for all entities that provided any accounting services for any of the Relators from January 1, 2010, to present; (2) all transfers of money and/or assets larger than $1,000.00 per transaction between any of the Relators from January 1, 2010, to present; (3) all transfers of money and/or assets larger than $1,000.00 per transaction between any of the Relators and any entity "owned and/or controlled and/or set up for the benefit of" the Relators from January 1, 2010, to present; and (4) all agreements or contracts relating to any transfer of assets among or between any of the Relators from January 1, 2010, to present.

These discovery requests are overly broad as written and not reasonably tailored to include only matters relevant to the case, such that they constitute an impermissible fishing expedition. *See **In re Am. Optical Corp.***, 988 S.W.2d at 713. While *some* discovery of the financial links between Relators may be appropriate considering RPI's alter ego allegations, these requests are not limited in topical scope and cover an unreasonably long period of time. *See **Kern v. Gleason***, 840 S.W.2d 730, 737 (Tex. App.—Amarillo 1992, no pet.). The requests call for production of extremely expansive financial information for a period of over ten years, while Devon only resided at David House from 2016 to 2020. Further, the requests are not limited in scope as to subject matter and appear likely to capture a vast number of transactions unrelated to the causes of action alleged in the underlying lawsuit related to personal injuries suffered by Devon. For these reasons, we conclude that Request for Production numbers 4, 5, 5, and 29 are overbroad as a matter of law.

**Overbroad Requests**

Relators contend that the trial court abused its discretion in compelling them to respond completely to Interrogatory numbers 1 through 5 and Request for Production numbers 1 through 7, 9, 10, 13, 15, 17, 18, and 22 through 29 because each request is overbroad. Again, absent evidence supporting Relators' overbreadth and irrelevance objections, we are limited to

---

[5] There are two consecutive Requests for Production numbered "5."

examining only the words of the discovery requests in our review.[6] *In re Mem'l Hermann Healthcare Sys.*, 274 S.W.3d at 202.

Similar to those discussed *infra*, the majority of the discovery requests to which Relators object on grounds of overbreadth encompass time periods, locations, or activities beyond those at issue in this case, and could have been much more narrowly tailored to include only matters relevant to the underlying causes of action (all stemming from personal injuries suffered by Devon during his residence at David House). *See In re Alford Chevrolet-Geo*, 997 S.W.2d at 180 n.1; *In re CSX Corp.*, 124 S.W.3d at 153. From their wording alone, Interrogatories 1 through 5 and Requests for Production 1 through 7, 9, 10, 15, 17, 28, and 29 are not sufficiently limited in time, again calling for the production of a great expanse of information spanning more than a decade (from January 1, 2010 to present) and encompassing documents outside the time in which Devon stayed at David House. Production Requests 22 through 27 contain no limitation on temporal scope whatsoever. Additionally, Interrogatories 1 through 5 and Requests for Production 1 through 7, 9, 10, 15, 17, and 22 through 29 are not sufficiently limited as to subject matter, calling for the production of evidence wholly unrelated to the facts of this case. Accordingly, Interrogatories 1 through 5 and Production Requests 1 through 7, 9, 10, 15, 17, and 22 through 29 are overbroad as a matter of law.

Request for Production 13 asks Relators to produce employment files for every caregiver, supervisor, and case manager who provided care, supervision, or case management services related to Devon. This request is inherently limited in time because Devon was a resident at David House from 2016 to 2020 and is limited in scope to only those employees who directly rendered services to him. However, Relators contend that employment files for employees who are not alleged to have personally abused Devon are irrelevant, making the request overly broad. Although some documents contained in the employment files of employees who rendered services to Devon are likely relevant to the alleged instances of abuse, whether Relators rendered services in a negligent fashion, and whether Relators knew or should have known about the presence of abusive caregivers at David House, it seems equally apparent that the files likely

---

[6] As an initial matter, we note that Relators argue that incidents of alleged neglect by caretakers should be excluded from discovery, but they did not present this argument in the trial court. It is well established that arguments not presented to the trial court will not be considered in a petition for writ of mandamus; as such, we do not consider Relators' contentions on this point. *In re Advance Payroll Funding, Ltd.*, 254 S.W.3d 710, 714 (Tex. App.—Dallas 2008, orig. proceeding) (citing *In re Am. Optical Corp.*, 988 S.W.2d 711, 714 (Tex. 1998) (orig. proceeding).

include documents of no relevance to the underlying causes of action in this matter. *See In re Mobil Oil Corp.*, No. 09-06-392 CV, 2006 WL 3028063, at *3 (Tex. App.—Beaumont Oct. 26, 2006, orig. proceeding) (mem. op.) ("There is nothing about the location of a document in the personnel file that necessarily makes it relevant to the pending action."). We conclude that Request 13 could have been more narrowly tailored to exclude irrelevant information and is therefore overbroad as a matter of law. *See In re CSX Corp.*, 124 S.W.3d at 153.

Request for Production 18 asks Relators to produce photographs and videos relating to or depicting any incident wherein Devon was injured and the surrounding events, or depicting "the residence at issue" from January 10, 2010, to present. This request further seeks production of photographs and videos "collected pursuant to an incident report, investigation, or government inquiry." The portion of the request regarding incidents of injury to Devon is appropriately limited to relevant subject matter and inherently limited in time because he was only resident at David House for a certain period. However, the remainder is not sufficiently limited as to time or subject matter, because it appears to seek all photographs and videos depicting David House for a period of more than ten years, as well as any photographs or videos collected in relation to any incident report, investigation, or government inquiry of any kind without any limitation as to time, location, or subject matter. *See In re Alford Chevrolet-Geo*, 997 S.W.2d at 180 n.1. Therefore, Request 18 is overbroad as a matter of law.

**Requests for Confidential Patient Information**

Relators argue that Respondent abused his discretion in compelling them to respond fully to Requests for Production 3, 9, and 10 because these requests seek the production of documents which would include protected health information about patients other than Devon.

A mandamus petition must contain clear and concise arguments for the contentions made, with appropriate citations to authorities and the appendix or record. *See* TEX. R. APP. P. 52.3(h). Fulfilling this duty entails more than proffering mere conclusions; a relator must provide substantive legal analysis supporting the arguments and conclusions. *In re Fitzgerald*, 429 S.W.3d at 897. In their mandamus petition, Relators do not cite to any statutory or jurisprudential authority as the basis for this objection, nor do they present any substantive analysis on this issue. Relators' failure to fulfill their duty under Rule 52.3(h) results in waiver of their complaint on this point regarding Requests for Production 3, 9, and 10. *See In re Aethon Energy Operating, LLC*, No. 12-21-00202-CV, 2022 WL 242902, at *5 (Tex. App.—Tyler Jan. 26,

2022, orig. proceeding) (mem. op.) (declining to address challenge to production requests where argument consisted of mere conclusions without substantive discussion of legal principles or controlling authority).

**Work Product Privilege**

Relators contend that Respondent abused his discretion in compelling them to respond fully to RPI's Request for Production 14, because "notes, memos, and correspondence" between Relators and their insurers related to the abuse of Devon "are protected by the work product privilege." Relators' failure to introduce evidence, cite authority, or provide any legal analysis precludes their entitlement to extraordinary relief.

The mere listing of a specific privilege in a discovery response does not prove that privilege. *In re Park Cities Bank*, 409 S.W.3d 859, 868 (Tex. App.—Tyler 2013, orig. proceeding). Rather, "[t]he party resisting discovery bears the burden of proving any applicable privilege." *In re Allstate Fire & Cas. Ins. Co.*, 617 S.W.3d at 657 (citing *Huie v. DeShazo*, 922 S.W.2d 920, 926 (Tex. 1996)). This means that a party should provide evidence to the trial court in the form of affidavits or testimony to establish the claimed privilege. *Id.* (citing *Salazar v. Coastal Corp.*, 928 S.W.2d 162, 172 (Tex. App.—Houston [14th Dist.] 1996, no writ)). Despite this burden, nothing in the record reveals Relators provided even a scintilla of evidence to support invocation of the work product privilege. Relators' petition cites Rule 192.5(a)(2) as the basis for their claim of privilege, which provides that work product comprises communications made in anticipation of litigation between a party and the party's representatives, including insurers. TEX. R. CIV. P. 195(a)(2). However, the record contains no evidence tending to prove that the documents at issue were in fact such communications, and therefore, Relators did not meet their burden to prove the privilege they claim applies here. *See Salazar*, 928 S.W.2d at 172 ("It is an abuse of discretion to deny discovery when no proof of the privilege is provided."). Moreover, outside of the citation to Rule 192.5(a)(2), Relators again cite no authority and provide no substantive legal analysis to support their conclusion that the trial court abused its discretion in ordering them to respond fully to Request for Production 14. *See* TEX. R. APP. P. 52.3(h); *In re Fitzgerald*, 429 S.W.3d at 897. Their failure to do so results in waiver of their complaint regarding Request 14.

11

**Summation**

Interrogatories. 1 through 5 and Requests for Production 1 through 7, 9, 10, 13, 15, 17, 18, and 22 through 29 are all overbroad as a matter of law because they lack reasonable limitations as to time, geography, and subject matter, and Respondent therefore abused his discretion in ordering Relators to respond thereto without limitation. Because Respondent's order exceeds the bounds of discovery permitted by the Rules of Civil Procedure and compels production of irrelevant information, Relators lack an adequate remedy by appeal. *See **In re Prudential Ins. Co. of Am.***, 148 S.W.3d at 136.

## DISPOSITION

Having concluded that Respondent abused his discretion by granting RPI's motion to compel with respect to Interrogatories 1 through 5 and Requests for Production 1 through 7, 9, 10, 13, 15, 17, 18, and 22 through 29, without temporal and subject matter limitations, we ***conditionally grant in part*** Relators' petition for writ of mandamus. We direct Respondent to vacate that portion of the July 20, 2023, order compelling responses to Interrogatories 1 through 5 and Requests for Production 1 through 7, 9, 10, 13, 15, 17, 18, and 22 through 29, and in its stead, to issue an order imposing limits on these requests and compelling Relators to respond to the discovery requests as limited. Relators' petition is denied in all other respects. We lift our stay of August 31, 2023.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered October 11, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# ORDER

**OCTOBER 11, 2023**

**NO. 12-23-00212-CV**

**LAURA LEE REDMAN, INDIVIDUALLY, RICHARD REDMAN, INDIVIDUALLY, BRIAN G. REDMAN, INDIVIDUALLY, KRISTY L. REDMAN, INDIVIDUALLY, COMMUNITY ACCESS, INC., REDMAN MANAGEMENT, LLC, AND REDMAN LEGACY, LP,**
Relators
V.
**HON. JUDGE AUSTIN R. JACKSON,**
Respondent

Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 21-2535-B)

ON THIS DAY came to be heard the petition for writ of mandamus filed by Laura Lee Redman, individually, Richard Redman, individually, Brian G. Redman, individually, Kristy L. Redman, individually, Community Access, Inc., Redman Management, LLC, and Redman Legacy, LP; who are the relators in appellate cause number 12-23-00212-CV and the defendants in trial court cause number 21-2535-B, pending on the docket of the 114th Judicial District Court of Smith County, Texas. Said petition for writ of mandamus having been filed herein on August 21, 2023, and the same having been duly considered, because it is the opinion of this Court that the petition for writ of mandamus be, and the same is, **conditionally granted in part**.

And because it is further the opinion of this Court that the trial judge will act promptly and vacate only that portion of the July 20, 2023, order compelling responses to Real Party in Interest Kenny S. Frederick's Interrogatories 1 through 5 and Requests for Production 1 through 7, 9, 10, 13, 15, 17, 18, and 22 through 29, and in its stead, to issue an order imposing limits on these requests and compelling Relators to respond to the discovery requests as limited; the writ will not issue unless the HONORABLE AUSTIN R. JACKSON fails to comply with this Court's order within ten (10) days from the date of this order. The petition is denied in all other respects.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*